United States Bankruptcy Court
Northern District of Illinois
Eastern Division

In re:

Tyrand Banks

Debtor.

Bankruptcy No. 15-bk-09819
Chapter 13

## MEMORANDUM OPINION ON TRUSTEE'S MOTION TO DISMISS AND DEBTOR'S MOTION TO CONFIRM PROPOSED CHAPTER 13 PLAN

The Chapter 13 Trustee has moved to dismiss Debtor's Chapter 13 plan (the "Motion to Dismiss") (Dkt. #31) and the Debtor has moved to confirm (the "Motion to Confirm") (Dkt. #32) his Chapter 13 plan (the "Plan") (Dkt. #2). As always, the Trustee is diligent in seeking to bring to the Court's attention any potential abuse of the bankruptcy system. He argues that (1) the Plan was proposed in bad faith because (a) it is a plan to pay only Debtor's attorney and (b) therefore the Plan is not an "adjustment of debts."[1] Debtor filed a cross motion for confirmation of his proposed Chapter 13 Plan.

For the reasons discussed below, it is found based on totality of the circumstances that the Plan was proposed in good faith. Therefore, the Trustee's Motion to Dismiss is denied and Debtor's Plan shall be confirmed, each by separate order.

### I.    JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer a proceeding to a bankruptcy judge under 28 U.S.C. § 157, and this matter is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Under § 157(b)(1) bankruptcy judges may hear and determine all core proceedings and may enter final judgments in those

---

[1] Confirmation was previously denied on September 16, 2015 as a result of failure of the Debtor to appear at the hearing. Dkt. #29.

1

proceedings. Section 157(b)(2)(L) provides that confirmation of a plan is a "core proceeding."

## II. BACKGROUND

The Debtor filed this Chapter 13 case on March 19, 2015. According to the schedules and summaries filed, the Debtor owns no real estate, owns minimal personal property (valued at $1,100), and has no secured or unsecured non-priority debt. The Debtor owes $5,080 to one unsecured priority creditor, the City of Chicago, for various parking tickets. The Debtor's Schedules I and J reveal that he is not married, has two minor dependents that live with him, ages 10 and 13, and has worked at the same establishment for one and a half years. His monthly income is $1,020 and expenses are $900, leaving an estimated disposable income of $120.

The Debtor's Plan filed March 19, 2015 provides for a monthly payment to the Trustee of $120 (the entirety of his disposable income) for 36 months, totaling payments of $4,320. *Plan*, §D (Dkt. #2). Of that $4,320, the Debtor's attorney will receive $4,000. *Plan*, §E(4) and §H(2)(d). The Trustee's fees are estimated at 6.60% of plan payments, totaling $285.12. *Plan*, §E(1). The Trustee seeks dismissal on the basis that the Plan is essentially a "fee-only" plan and as such, fails to meet the "good faith" requirements for confirmation under § 1325.

## III. APPLICABLE STANDARDS
### A. CHAPTER 13 GENERALLY

Two goals of bankruptcy are to grant a "fresh start" to the "honest but unfortunate debtor" and also ensure equitable treatment of creditors. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). However, Chapter 7 and Chapter 13 differ in how debtors reach these goals.

In a Chapter 7, a trustee collects a debtor's non-exempt property, sells that property, and uses the cash proceeds to pay the debtor's creditors. *See* 11 U.S.C. § 704(a)(1). Afterwards, the Chapter 7 debtor is entitled to a discharge of all

2

outstanding debts. *See* 11 U.S.C. § 727(a). Compared to a Chapter 13, the Chapter 7 process is much faster as debtor's non-exempt assets are immediately liquidated and the proceeds distributed to creditors.

Chapter 13 allows a debtor to pay creditors over time. *Thompson v. GMAC, LLC.*, 566 F.3d 699, 706-07 (7th Cir. 2009). "Chapter 13 authorizes an individual with regular income to obtain a discharge after the successful completion of a payment plan." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007). That plan must "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). A plan may extend from three to five years. A Chapter 13 debtor does not receive a discharge until the plan end.

Debtors may choose which bankruptcy chapter to file for when they are eligible for both. The issue in this case is "[c]an a below median income debtor in bankruptcy, impoverished and struggling to meet monthly financial obligations, choose to file a Chapter 13 petition instead of a Chapter 7 petition? . . . What justification must the debtor present for her choices?" *In re Wark*, 2015 Bankr. LEXIS 4214, *2-3 (Bankr. D. Kan. Dec. 17, 2015).

### B. GOOD FAITH

Chapter 13 contains two "good faith" requirements. First, § 1325(a)(3) requires the bankruptcy court to determine if the plan was proposed in good faith, and § 1325(a)(7) similarly mandates consideration of whether the petition was filed in good faith. In this proceeding, the Trustee only challenges whether the proposed Plan was filed in good faith. *See Trustee's Memorandum in Support of Motion to Dismiss*, pg. 3, Dkt. # 38.

"'The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case.'" *Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426, 431 n. 14 (7th Cir. 1982) (quoting *In re Kull*, 12 B.R.

3

654, 658 (S.D. Ga. 1981). Yet "[t]he term, 'good faith,' is not defined in the Code or in its legislative history, and courts have said that no precise or comprehensive definition is possible." *In re Hawes*, 73 B.R. 584, 587 (Bankr. E.D. Wis. 1987); *see also In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990).

With no comprehensive definition available, the Seventh Circuit joined the majority of courts and adopted a "case-by-case" approach. *Rimgale*, 669 F.2d at 431. The inquiry is fact sensitive and should focus on whether the debtor "has unfairly manipulated the Bankruptcy Code." *In re Goeb*, 675 F.2d 1386 (9th Cir. 1982). To guide the bankruptcy court, the Seventh Circuit has proposed a nonexhaustive list of factors. *Rimgale*, 669 F.2d at 432-33; *In re Smith*, 848 F.2d 813, 821 (7th Cir. 1988) (expanding the *Rimgale* factors). While no one factor is controlling, the cumulative effect may lead to a finding of the absence of good faith.

These factors are:

(1) Does the proposed plan state [debtor's] secured and unsecured debts accurately? (2) Does it state [debtor's] expenses accurately? (3) Is the percentage of repayment of unsecured claims correct? (4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court? (5) Do the proposed payments indicate "a fundamental fairness in dealing with one's creditors?

*Rimgale*, 669 F.2d at 432-33 (internal citations omitted). For the reasons discussed below, the facts presented are found to weigh in favor of confirmation of the proposed Chapter 13 Plan.

### IV. APPLICATION

#### A. FEE ONLY PLANS

In most Chapter 13 cases, paying attorney fees through a plan is not only permitted, it is the norm. However, when a Chapter 13 plan effectively only deals with payment of such fees, they are called a "fee-only" plan. These fee-only plans become a problem "when payment of such fees becomes the overriding purpose for filing a

4

Chapter 13 case, especially when relief under Chapter 7 would be the logical choice if it were not for the attorney-fee hurdle." *In re Jackson*, 2012 Bankr. LEXIS 1137, *27, 2012 WL 909782 (Bankr. N.D. Ala. Mar. 16, 2012). These plans sometimes have the potential to "promote the payment of attorney fees at the expense of debtors and compliance with the Code, Rules and ethical standards." *In re Davis*, 2014 Bankr. LEXIS 2985, *15-16, 2014 WL 3497587 (Bankr. N.D. Ala. July 11, 2014); *see also In re Platt*, 2012 Bankr. LEXIS 5407, *6, 2012 WL 5842899 (Bankr. S.D.Ind. November 19, 2012).

Other Circuits that have considered challenges to fee-only cases have unanimously adopted the view that fee-only Chapter 13 plans are not *per se* bad faith. *Berliner v. Pappalardo (In re Puffer)*, 674 F.3d 78, 83 (1st Cir. 2012) (rejecting a *per se* rule and remanding case back to bankruptcy court for consideration of the "totality of the circumstances"); *Brown v. Gore (In re Brown)*, 742 F.3d 1309 (11th Cir. 2014); *Sikes v. Crager (In re Crager)*, 691 F.3d 671 (5th Cir. 2012).[2]

Instead, fee-only plans must meet a "'heavy burden' in demonstrating 'special circumstances' [] to justify the chapter 13 petition or the chapter 13 plan." *Platt*, 2012 Bankr. LEXIS 5407, *9-10 (finding that both the Chapter 13 petition and plan were not filed in good faith). "The inquiry is broad but it rests on whether there has been an abuse of the provisions, purpose or spirit of the Bankruptcy Code." *Barnes*, 2013 Bankr. LEXIS 161, * 31. The Court must ask "whether the Debtor is attempting to discharge debts at the expense of creditors, or is the Debtor making an honest effort to repay them to the best of her ability[?]" *Id.* at *39.

---

[2] Although not all Circuits have expressed an opinion yet, many bankruptcy courts have also expressed a reluctance to apply a *per se* rule and instead apply a totality of the circumstances test. *See e.g., In re Wark*, 2015 Bankr. LEXIS 4214, *20 (Bankr. D. Kan. Dec. 17, 2015); *In re Barnes*, 2013 Bankr. LEXIS 161, 2013 WL 153848 (Bankr. E.D. NC January 15, 2013); *In re Platt*, 2012 Bankr. LEXIS 5407, *9, 2012 WL 5842899 (Bankr. S.D. Ind. Nov. 19, 2012); *In re De Rua*, 2009 Bankr. LEXIS 4497, 2009 WL 8712394 (Bankr. E.D.Cal. October 14, 2009).

The cases cited by the parties are enlightening but not dispositive. This Court was tasked with reviewing the facts provided in the instant case, and the Debtor's current circumstances are distinguished easily from those cited cases.

For example, the bankruptcy court in *Berliner* concluded that there were no "special circumstances" to explain the fee-only Chapter 13 plan and therefore concluded that it was proposed in bad faith. *In re Puffer*, 478 B.R. 101 (Bankr. D. Mass. 2012), *aff'd in part, rev'd in part sub nom. Berliner v. Pappalardo (In re Puffer)*, 494 B.R. 1, 2 (D. Mass. 2013). The debtor was single and employed with no significant assets, although he did have a car and some tools valued at approximately $2,200. He lived with his parents and had a disposable income of approximately $100 per month. The debtor's only debts were unsecured and totaled approximately $15,000.00. Thus, the Debtor was a prime candidate for relief under Chapter 7. It was held that that there were no "special circumstances" other than the need to pay attorney's fees that precipitated the Debtor filing Chapter 13 instead of 7.

The Eleventh Circuit opinion also found that a fee-only plan was filed in bad faith where the debtor "sought relief under chapter 13, not to adjust debts and preserve assets, but to accommodate payment of attorney fees." *Brown v. Gore (In re Brown)*, 742 F.3d 1309, 1313 (11th Cir. 2014) (internal citations omitted). The bankruptcy court applied a totality of the circumstances test analyzing "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13," and found that the only reason the debtor filed a Chapter 13 petition was so the debtor could pay the $2,000 attorney's fee through installments under a plan. *Id.* at 1316, 1317. The debtor was better suited to be in Chapter 7 and there was no "unique circumstances that would lead to the conclusion that it was in [the debtor's] best interest to file under Chapter 13." *Id.* at 1317. The debtor had only exempt assets, and thus in a Chapter 7, there would be no assets at risk for liquidation. Thus, "[w]hile the choice of chapter is one made by

6

the . . . debtor this Chapter 13 plan was for the benefit of the lawyer and not in the best interest of the debtor." *Id.*

The Trustee also relies on *In re Paley*, where the bankruptcy court rejected a proposed fee-only plan. 390 B.R. 53 (Bankr. N.D.N.Y. 2008). Neither of the plans in *Paley* proposed to run for the "applicable commitment period" of 36 months required for "below median-income" debtors required by § 1325(b). Instead, the plans proposed to pay the debtors' disposable incomes for nine and twelve months, respectively. The court was concerned that the length of the plan was connected to the payment of the attorney's fees. A plan "whose duration is tied only to payment of attorney's fees simply is an abuse of the provisions, purpose, and spirit of the Bankruptcy Code." *Paley*, 390 B.R. at 59. It was held that the debtors had the ability, but not the intent, to fund a meaningful Chapter 13 plan, and thus the plan was not filed in good faith. Similarly in *Heal*, the District Court for the Northern District of California affirmed the bankruptcy court's finding that the proposed Chapter 13 plan was filed in bad faith because it only proposed an eight month plan term. *Heal v. Burchard (In re Heal)*, 2010 U.S. Dist. LEXIS 107879, *7, 2010 WL 3834017 (N.D.Cal. September 28, 2010). The court found that the short term period in conjunction with the attempted lien strip of the debtor's unsecured mortgage "indicated that the debtors were attempting to manipulate the Bankruptcy Code." *Id.* at 9.

The good faith inquiry in the instant case "boils down to whether the Debtor should be in a chapter 13 case in the first place." *Platt*, 2012 Bankr. LEXIS 5407, *7. It is true that the Debtor appears to be an ideal Chapter 7 candidate like the Debtors in *Puffer, Brown,* and *Paley*. The Debtor has no non-exempt assets, and thus is not at risk for having assets seized for liquidation to pay creditors. The Debtor also receives below median income for his family size.[3] It is also true that the fees owed to Counsel for the

---

[3] Median family income is defined under 11 U.S.C. § 101(39A) and reported by the Bureau of the Census in the most recent year. *In re Baker*, 2009 Bankr. LEXIS 391, *8, 2009 WL 412885 (Bankr. N.D. Ill. Jan. 30,

7

Debtor may have been lower for filing a Chapter 7 instead of the 13. It is also likely that the Debtor would have received a Chapter 7 discharge within a few months of his filing. Among other distinctions, Chapter 13 increased fees owed to Counsel and to the Chapter 13 Trustee, increased the filing fee owed by the Debtor, and will delay the Debtor's discharge for at least 36 months to the end of his plan.

However, Chapter 13 offers this Debtor something that Chapter 7 cannot offer him and that he desperately needs – a discharge of his debt owed to the City of Chicago for parking tickets so that he can keep his driver's license. In this case, "special circumstances" do exist to warrant the Debtor filing a Chapter 13 instead of a Chapter 7. *Crager*, 691 F.3d 671.

Prior to filing his bankruptcy case, the Debtor incurred many parking tickets resulting in loss of his driver's license under Illinois law and a substantial debt to the City of Chicago. The Debtor requires his driver's license for his job as a car wash attendant. Debtor tried to negotiate with the City of Chicago prior to filing this bankruptcy. However, the City requires at least a 50% down payment, which the Debtor did not have.

The debt owed to the City of Chicago while not dischargeable under Chapter 7 is dischargeable by a Chapter 13. *See e.g., In re Ezell*, 502 B.R. 798, 812 (Bankr. N.D. Ill. 2013) ("Debtor's parking citations were subject to discharge through Chapter 13"). Parking tickets are fines or penalties payable to a governmental unit, and therefore subject to §523(a)(7). *See In re Gallagher*, 71 B.R. 138, 139 (Bankr. N.D. Ill. 1987). While debts within § 523(a)(7) are not dischargeable under § 727, they are dischargeable under § 1328(a). 11 U.S.C. § 1328(a).

---

2009). Debtors listed their household size as three and, based on their current monthly income compared to the median family income for Illinois and family size, he is a below median debtor. The Census Bureau estimates that the current median income for a family of three in Illinois is $69,975.

It is clear that the sole purpose for this debtor filing a Chapter 13 instead of a Chapter 7 was to obtain a discharge of his debt owed to the City of Chicago. *Debtor's Response to Trustee's Motion*, pg. 6 ("The only reason that the debtor filed for Chapter 13 bankruptcy rather than Chapter 7 was because Chapter 13 bankruptcy is the only bankruptcy option available to address the specific issue that the debtor was facing."). Without the Chapter 13 discharge, the Debtor's ability to work is compromised as he needs his driver's license to qualify to work as a car wash attendant. This "special circumstance" is clear and the Debtor, with advice of Counsel, determined that the benefits of a Chapter 13 discharge were more advantageous than a Chapter 7 discharge. Just because a debtor files Chapter 13 to discharge "a debt [that] would be nondischargeable under Chapter 7, however, is not alone sufficient as a matter of law to constitute bad faith." *In re Smith*, 848 F.2d 813, 818 (7th Cir. 1988). "The Court will not penalize the Debtor by finding a lack of good faith because of his desire to avail himself of the legitimate protections from his creditors afforded by the Bankruptcy Code." *In re Allard*, 196 B.R. 402, 413 (Bankr. N.D. Ill. 1996).

While the Plan utilizes the benefits of Chapter 13, it does not appear to do so at the expense or the "spirit" of chapter 13. It is clear that Debtor's inability to pay the full attorney fee for a Chapter 7 case prior to filing, as the Trustee suggests, is not the Debtor's reason for choosing to file a Chapter 13 instead of a Chapter 7.

The facts here are distinguishable from those cases where fee-only plans were coupled with an attempted abuse of the bankruptcy system. Indeed, the Debtor is doing exactly what the Bankruptcy Code requires him to do. Unlike the debtors in *Paley* and *Heal*, he has committed to pay his monthly disposable income to the Chapter 13 trustee for the "applicable commitment period" of 36 months, satisfying § 1325(b)(4)(A) and (b)(1)(B). Debtor has also satisfied § 1322 and has proposed to pay all of his disposable income for that 36 month period. § 1322(a)(1) and § 1325(b)(1)(B). Debtor is also able to satisfy the "best interests" test under § 1325(a)(4). Essentially, Debtor's creditors would

receive nothing in a Chapter 7 because there are no assets to liquidate. *See In re Cloutier*, 3 B.R. 584 (Bankr. D. Co. 1980) (finding that when all assets are exempt, compliance with best interests is the same result as if no payments are made under a plan).

Similarly, the Trustee's argument that the Plan fails to offer an "adjustment of debts" must fail. The Trustee offers no case law or statutory citation to support a requirement of confirmation that a debtor "adjust his debts." Even if there was such a requirement, Debtor intends to adjust his largest debt – a debt to the City of Chicago – via his discharge.

Therefore, it is held that the proposed Plan was not filed in bad faith.

## B. REASONABLENESS OF FEES

Compensation of debtors' attorneys is a matter critical to "the integrity of the bankruptcy process." *In re Nelson*, 424 B.R. 361, 363 (Bankr. N.D. Ill. 2009). Bankruptcy courts have increasingly adopted systems where attorneys for Chapter 13 debtors can be awarded a presumptively reasonable standard fee for each case. *In re Brent*, 458 B.R. 444, 450 (Bankr. N.D. Ill. 2011). "These flat fees are sometimes called "no look" fees because they are awarded without the kind of detailed application and itemization of services that Rule 2016(a) would otherwise demand." *Id.* However, "the flat fee represents a kind of agreement not only with the debtor but with the court: in exchange for the attorney's commitment to perform specified legal services for the debtor, the court awards a flat fee and dispenses with the usual application." *Id.*

The Seventh Circuit Court of Appeals has a history of approving presumptively reasonable flat fees. *See In re Geraci*, 138 F.3d 314, 321 (7th Cir. 1998) (fees in Chapter 7 consumer cases); *In re Kindhart*, 160 F.3d 1176, 1178 (7th Cir. 1998) (fees in a Chapter 13 case). As a result of *Geraci* and *Kindhart*, the judges of this bankruptcy court issued a

Case 15-09819 Doc 41 Filed 02/08/16 Entered 02/09/16 12:47:30 Desc Main
Document Page 11 of 12


standing order establishing a flat fee arrangement in Chapter 13 cases. Standing Order dated Nov. 26, 2002[4]; *see also In re Andreas*, 373 B.R. 864, 871 (Bankr. N.D. Ill. 2007).

The Trustee argues that the $4,000 flat fee is unreasonably large. Specifically, he suggests that "[t]he services to be performed in a Chapter 13 case, such as this case, in which there are no secured creditors and only one unsecured creditor are very likely to be considerably less than the services to be performed in a more typical Chapter 13 case." *Motion*, pg. 5. The Trustee suggests that this Court reduce the fees requested and if additional fees are necessary, then Counsel for the Debtor can seek them at such a time.

The Trustee's argument was rejected in *Crager*. 691 F.3d at 676-77. In *Crager*, the Trustee argued that the proposed fee-only plan was "more simplistic and less complicated than the average Chapter 13 case" and therefore the attorney was not entitled to the full no look fee. *Id.* at 676. The Court found that the

> Trustee's objection was based on the false premise that [Debtor's] case was "more simplistic" than the average Chapter 13 bankruptcy. Indeed, the Trustee's own "bad faith" challenge to [Debtor's] plan transformed the case from a routine Chapter 13 matter into a complicated proceeding. Given this added complexity, the reasoning of the Trustee's objection was not sound.

*Id.* at 677.[5]

---

[4] The Standing Order recited that the court had adopted a "Rights and Responsibilities Agreement between Chapter 13 Debtors and Their Attorneys," called the "Model Retention Agreement" ("MRA"), along with a form application for compensation. The MRA addressed attorney compensation and offered either a flat fee through confirmation or a flat fee through case closing. *In re Brent*, 458 B.R. 444, 458 (Bankr. N.D. Ill. 2011). Since its adoption, the flat fee arrangement and accompanying forms have been modified from time to time. Most recently, the bankruptcy Court issued General Order 13-1, increasing the maximum flat fee for a chapter 13 case to $4,000. Gen. Order 13-1 date July 10, 2013

[5] This reasoning is not abrogated by the holding in *Baker Botts L.L.P. v. Asarco LLC (in re Asarco, LLC)*, 135 S.Ct. 2158, 2167 (2015) (holding that fees cannot be awarded for defense of a fee application because the fees sought were "only" compensation for the fee-defense litigation and was not "'compensation' for a 'service.'"). The situation in *Crager* and in the instant bankruptcy proceedings are not "only" in defense of counsel's fees. Instead, the defense is of the Debtor's Plan and the Debtor's good faith proposal in the Plan which included attorney's fees.

11

As in *Crager*, this Court finds that the attorney's fees requested by Counsel for the Debtor are reasonable under the circumstances. Counsel for the Debtor filed the Court Approved Retention Agreement on April 28, 2015 (Dkt. #12). The Retention Agreement sought $4,000 as a flat fee for services through the bankruptcy case closing. The Retention Agreement (Dkt. #12-2) provides specifically that Counsel will be "responsible for representing the debtor on all matters arising in the case," which Counsel has done, including filing a complete petition, proposing a plan, and a response to Trustee's Motion. As in to *Crager*, the Trustee's objection transformed this case into something requiring serious work by Counsel. In light of the finding that the Plan was proposed in good faith, the Court also rejects Trustee's objection to the fees requested by Counsel for the Debtor.

## CONCLUSION

For the aforementioned reasons, the Motion to Dismiss will be denied and Debtor's Motion to Confirm will be granted, by separate orders.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated: February __, 2016

FEB - 8 2016

12